# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| DR. PATRIZIA RICCARDI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06cv0605 |
| | ) | |
| VANDERBILT UNIVERSITY MEDICAL CENTER, | ) | |
| and DR. ROBERT KESSLER, and | ) | |
| DR. MARTIN SANDLER, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**CASES CONSOLIDATED**
**Judge Thomas A. Wiseman, Jr.**

| | | |
|---|---|---|
| DR. ROBERT KESSLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06cv0615 |
| | ) | |
| DR. PATRIZIA RICCARDI, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>MEMORANDUM OPINION</u>

Before the Court is Defendant Patrizia Riccardi's Renewed Motion for Judgment as a Matter of Law and alternative motion for remittitur or a new trial (Doc. No. 245) in Civil Action No. 3:06cv0615. Plaintiff Robert Kessler has filed his response in opposition to the motion (Doc. No. 251), and Dr. Riccardi has filed a Reply brief (Doc. No. 256).

In her motion, Dr. Riccardi seeks judgment in her favor as a matter of law on Dr. Kessler's defamation claim on the grounds that Dr. Kessler failed to present evidence of actual damages resulting from the defamatory statements, as required by Tennessee law. Alternatively, Dr. Riccardi requests a new trial or remittitur of the amount of damages awarded by the jury on Dr. Kessler's defamation claim for injury to reputation and mental and emotional suffering on the grounds that the award is not supported by the evidence and is clearly excessive. In addition, Dr. Riccardi requests that the damages awarded for

pecuniary injury—$500,000—be set aside on the grounds that Dr. Kessler presented no evidence from which a jury could reasonably conclude that he suffered any actual monetary losses resulting from the defamation.  In addition,

Dr. Riccardi also seeks to set aside the $5,000 awarded by the jury to Dr. Kessler for actual monetary damages associated with battery on the grounds that, again, there was no evidence from which a reasonable jury could conclude that Dr. Kessler suffered any such monetary damages.

Finally, Dr. Riccardi seeks remittitur or a new trial on the amount of punitive damages awarded by the jury on the grounds that such amount, $950,000, is grossly excessive.

As set forth below, the Court finds that there is evidence in the record to support the jury's finding that Dr. Kessler suffered actual damages resulting from defamation by Dr. Riccardi.  However, the Court finds that there is not sufficient evidence in the record to support the awards of actual monetary damages of either $500,000 arising from the defamation or $5,000 arising from battery.  Further, the Court finds that the $1,500,000 awarded for damage to reputation and emotional pain and suffering and the $950,000 punitive damages award excessive and must be reduced or a new trial ordered.  The Court will therefore suggest remittitur of those amounts and will conditionally deny Dr. Riccardi's motion for a new trial on the various damages issues, subject to Dr. Kessler's acceptance of the suggested remittitur amounts as set forth herein.

## I.     BACKGROUND

Trial of this matter began on October 9, 2007 and ended on October 18, 2007 after the jury had returned a verdict in favor of Dr. Kessler and against Dr. Riccardi on both Dr. Riccardi's claims against Dr. Kessler and Dr. Kessler's claims against Dr. Riccardi.  Judgment was entered on October 25, 2007.  On October 17, 2007, at the conclusion of all proof, Dr. Riccardi made a Rule 50(a) motion for judgment as a matter of law as to Dr. Kessler's defamation claim on the grounds that Dr. Kessler had failed to proffer material evidence demonstrating that he sustained actual injury resulting from any allegedly defamatory statements by Dr. Riccardi.  The Court denied the motion and the jury returned a verdict awarding Dr. Kessler $2,000,000 in damages on his defamation claim (including $500,000 for actual monetary damages for "property damage, medical expenses, inconvenience, lost work time, etc." and $1,500,000 in compensatory damages for damage to reputation and standing in the community, emotional distress,

emotional pain, mental anguish, loss of enjoyment of life, humiliation and embarrassment); $15,000 on his battery claim (including $5,000 for actual monetary or out-of-pocket damages); and $10,000 on his assault claim.

The jury also determined that Dr. Kessler was entitled to punitive damages. On October 18, 2007, after additional proof was presented, the jury awarded Dr. Kessler $950,000 in punitive damages.

Dr. Riccardi has now filed her motion for judgment as a matter of law and alternative motion for a new trial or remittitur.

## II.    STANDARD OF REVIEW

Under Rule 50 of the Federal Rules of Civil Procedure, the Court may grant judgment against a party who has been fully heard on an issue during a jury trial if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In a diversity action, review of a Rule 50 motion based on sufficiency of the evidence is governed by the forum state's law. *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996) (distinguishing between standard of review applied to Rule 50(b) motions in diversity cases raising issues of law and issues of evidentiary sufficiency). Under Tennessee law, which applies in this case, the reviewing court must "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be draw [n] from the whole evidence." *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245, 1248 (6th Cir. 1984) (quoting *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977)). "A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion." *Id.* (quoting *Holmes*, 551 S.W.2d at 685).

In ruling on a renewed motion for judgment as a matter of law under Rule 50(b), the Court may allow the jury's verdict to stand, direct entry of judgment as a matter of law or order a new trial. Judgment as a matter of law is appropriate when the plaintiff fails to present legally sufficient evidence as to one of the necessary elements of his cause of action. *Eaton v. McLain*, 891 S.W.2d 587, 590–91 n.3 (Tenn. 1994).

## III.    DR. RICCARDI'S MOTION

### A.    Motion for Judgment as a Matter of Law as to Defamation Claim

It is now well established in Tennessee law that a party seeking to establish a defamation claim must plead and prove actual injury resulting from the alleged defamatory words in order to recover damages. *Memphis Pub'g Co. v. Nichols*, 569 S.W.2d 412, 418–19 (Tenn. 1978).[1]   The actual injury requirement was discussed in *Gertz* and has been repeated subsequently in numerous Tennessee defamation cases:

> We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.  Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

*Gertz*, 418 U.S. at 349–50, *quoted in Nichols*, 569 S.W.2d at 416; *see also Safro v. Kennedy*, No. E200601638COAR3CV, 2007 WL 1215052, *5 (Tenn. Ct. App. April 25, 2007); *Hibdon v. Grabowski*, 195 S.W.3d 48, 68 (Tenn. Ct. App. 2005); *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997) (among others, all quoting *Gertz*).  In other words, the failure to prove special damages or out-of-pocket losses is not necessarily determinative, *Handley*, 588 S.W.2d at 776; instead, the issue is whether the record contains material evidence of impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering.  *Id.*  More recently, various Tennessee cases have held that evidence of "anger, mere annoyance or loss of peace of mind" is not sufficient to establish a compensable injury resulting from a defamatory utterance.  *See, e.g.*, *Dowlen v. Mathews*, M2001-03160-

---

[1] The *Nichols* Court initially quoted *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974), as prohibiting presumed damages in cases involving "plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth." *Id.* at 349, *quoted in Nichols*, 569 S.W.2d at 416. The language used in *Nichols*' holding, however, was loose enough to be applied more broadly, as the Court appeared to opine that *Gertz* barred presumed damages in *all* defamation cases, even if knowledge of falsity or reckless disregard for the truth was proven. *Nichols*, 568 S.W.2d at 419 ("Since *Gertz* has held that presumed damages are no longer permissible, . . . [w]e hold, therefore, that the *Per se/per quod* distinction is no longer a viable one.  The plaintiff must plead and prove injury from the alleged defamatory words, whether their defamatory meaning be obvious or not.").  The Tennessee Court of Appeals has subsequently recognized that "[a]lthough *Nichols* does not specifically abrogate the Presumption of Damages Doctrine in cases asserting knowledge of falsity or reckless disregard for the truth—indeed *Gertz* would indicate otherwise—later appellate cases of this Court do." *Gulf Life Ins. Co. v. Whittle*, No. , 1993 WL 410021 (Tenn. Ct. App. Oct. 14, 1993) (citing *Emerson v. Garner*, 732 S.W.2d 613 (Tenn. Ct. App. 1987); *Sullivan v. Young*, 678 S.W.2d 906 (Tenn. Ct. App. 1984); *Handley v. May*, 588 S.W.2d 772 (Tenn. Ct. App. 1979).

COA-R3-CV, 2003 WL 1129558, at *5 (Tenn. Ct. App. Mar. 14, 2003); *Murray v. Lineberry*, 69 S.W.3d 560, 564 (Tenn. Ct. App. 2001); *Handley v. May*, 588 S.W.2d 772, 777 (Tenn. Ct. App. 1979).

On the basis of these cases, Dr. Riccardi argues in the present motion that the evidence Dr. Kessler presented at trial was insufficient to support the jury's award for impairment to reputation, humiliation, and mental anguish and suffering. The testimony of Dr. Kessler given at trial in support of his claims for damages arising from the defamation is as follows:

Q.      And after you returned from Toronto back to Nashville, did you learn that Dr. Riccardi had told others her version of what had happened in Toronto?

A.      I later learned that she had told other people, whom I knew, her version that I had assaulted and attempted to rape her.

Q.      And how did that make you feel?

A.      Well, she was – awful. I mean, I've never been accused – I've never been arrested for anything, any crime, up until this Toronto incident, my entire life. My reputation academically and personally was spotless. And now I'm being accused incessantly of being a rapist, of somebody who was assaulting somebody, accused of being a sexual harasser. You can imagine how it makes you feel. It makes you – it's extremely stressful, it's extremely stressful. You can deny it, but it's like a cloud that hangs over you and pushes you down and zaps your energy.

And the net result of this was I think I became depressed somewhat, anxious somewhat, my work productivity went way down . . . . I've been unable to work to get my funding going. My academic career has suffered as a result. I'm not having funding.

And, you know, you never know what other people think of you. Do they really believe her? Do they really believe what Dr. Riccardi said? And so you walk around with this spectre behind you. I was sleepless from stress. Previously, my work schedule had been, you know, I would get to work at about 8:30, and I would often go back to work in the evening, or I would work at home until 9:00, 10:00 in the evening, sometimes 11:00. I'm used to putting in 12 or 14 hour days. Now I go in to work, I get there at 8:30, and leave at 5:00. It's all I can do. I go home, and I can't work. My energy is gone. I don't sleep well at night.

(Tr. Transcript at 101.)

Any time you have a meeting now, you wonder how many of these people know about this, how many jobs, positions, am I not being considered for because people think I'm a rapist, a crazy person, a sexual harasser. It's a whispering campaign designed to destroy one's reputation.

In academics, you have a CV, but it's your reputation that counts. I don't think I could apply for a job anywhere else now and be considered with this AAUW [American Association of University Women] thing out. It's pretty public.

(Tr. Transcript at 102.)

Q.      Now, you mentioned that you had some sleeping problems; correct?
A.       Yes, sir.

Q.      And how long did you have those?
A.      They continue to this day.

(Tr. Transcript at 139.)

Q.      And do you still work for Vanderbilt?
A.      Yes, sir.
Q.      Are you still an attending professor?
A.      Yes.
Q.      And are you still doing research and working on grants?
A.      I'm still doing research, but my work on grants has decreased because of my inability to get my independent funding due to my lack of energy, just lack of – and my just stress due to this whole situation.

(Tr. Transcript at 139.)

A.      What decreased my energy, sir, were the malicious allegations, spurious lies, that Dr. Riccardi made about me, published on the web, and has told everyone she can find.  I find it extremely stressful and depressing.

(Tr. Transcript at 140.)

A.      What I am saying, sir, that Dr. Riccardi's lies and allegations have caused me great pain and suffering.

(Tr. Transcript at 141.)

Taking the strongest legitimate view of the evidence in Dr. Kessler's favor as required by the applicable standard of review, the Court finds that the jury reasonably inferred from this testimony that Dr. Kessler sustained compensable injuries in the form of anxiety, personal humiliation, mental anguish and suffering as a result of Dr. Riccardi's false accusations.  The degree of mental harm incurred is supported by the fact that Vanderbilt undertook a lengthy and invasive investigation into Dr. Riccardi's claims, and that Dr. Riccardi has continued to maintain the truth of her assertions for over two years, and posted her version of events on the internet approximately six months prior to trial.  The case is distinguishable on the facts from those cited by Dr. Riccardi finding insufficient evidence of damages to support a defamation claim.[2]  Dr. Riccardi's motion for judgment as a matter of law as to Dr. Kessler's defamation claim as a whole must therefore be denied.

_____

[2] For instance, in *Handley v. May*, the defamatory statement in question was one isolated statement of very limited publication.  In considering the issue of damages, the Tennessee Court of Appeals found that the only evidence of personal humiliation and mental anguish and suffering showed that plaintiff was "under mental stress and strain independent of the defamatory utterance and she stated when she was apprised of the utterance in the telephone conversation:  'Well, the telephone call was quite upsetting.' "  588 S.W.2d  at 777.  Other than that, she stated "she was unable to concentrate on her business and concluded:  'I think it was the unknown that bothered me more than anything else.' "  *Id*. at 777.  The court also observed that the plaintiff was apparently more angry than anguished.  Noting that

Dr. Riccardi also argues that there is no evidence in the record to support a finding that the defamatory statements caused actual damage to Dr. Kessler's reputation and standing in the community, other than through Dr. Kessler's own testimony that he perceived his reputation to have been diminished. Dr. Riccardi's perception in that regard is relevant to his damages in the form of humiliation, embarrassment, and mental anguish.  *Cf. Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152 (Tenn. Ct. App. 1997) (in libel suit, affirming jury award of $150,000 for emotional distress based in part on evidence that the plaintiff was "devastated" by damage to his reputation built up over 40 years).  However, it does not demonstrate that his reputation in the community has actually been damaged.  *See id.* (finding that there was no testimony or evidence in the  record that the plaintiff actually suffered injuries to his reputation as a result of the publication found to be defamatory and therefore vacating the $200,000 awarded for such damage to reputation).  Notwithstanding, the Verdict Form did not require the jury to distinguish between the damages attributable to mental and emotional suffering and those attributable to injury to reputation— nor did the parties object to the wording of the Verdict Form in that respect.  Accordingly, the Court will consider the amount of the compensatory damages award as a whole, below, in the context of Dr. Riccardi's motion for remittitur or a new trial on the issue of defamation damages.

Finally, Dr. Riccardi argues that the evidence in the record is not sufficient to support the jury's award of $500,000 in monetary damages.  With respect to this latter argument, the Court agrees.  The testimony given by Dr. Kessler at trial indicated that his career suffered because he was unable to work as much as he had previously and has not obtained as much grant funding as he had in the past.  Dr.

---

"mere annoyance or loss of peace of mind do not constitute recoverable special damages," the Court held that there was no material evidence on the issue of damages and therefore affirmed the trial court's directed verdict in favor of the defendant.  *Id.*

Similarly, in *Dowlen v. Mathews*, the Tennessee Court of Appeals affirmed the trial court's directed verdict in favor of the defendant on the plaintiff's defamation case that was based on a citizen's verbal "assault" against a police officer, characterized by the trial court as a "tirade of inexcusable, offensive, racist language."  2003 WL 1129558, at *5.  The appellate court agreed with the trial court that this language, though offensive, did not rise to the level of defamation.  In addition, the court found that there was no evidence of serious damage to the plaintiff other than some nightmares and difficulty sleeping immediately after the incident.  Otherwise, no one believed the statements, and they did not result in investigation, demotion, suspension, or any missed work.  The Court held that the evidence did not show any harm "ris[ing] above anger, mere annoyance or loss of peace of mind, resulting in no actual damages to Officer Dowlen."  *Id.*  *See also Murray v. Lineberry*, 69 S.W.3d at 564 (noting that "the damages complained of by the appellant never rose above embarrassment stemming from individual encounters," and as such did not "rise above 'anger, mere annoyance or loss of peace of mind,' " *id.*, and therefore was not compensable).

Kessler, however, did not present any evidence that he missed days of work, that his salary or income was reduced as a result of his lack of energy or the investigation of Dr. Riccardi's claims, or that he suffered any type of property damage resulting from the defamatory accusations. The jury's award of $500,000 for "actual monetary damages" will therefore be set aside as not supported, as a matter of law, by the evidence in the record. The motion for judgment as a matter of law as to that portion of the damages will be granted.

> **B.** **Motion for Remittitur or New Trial on the Amount of Defamation Damages**

Dr. Riccardi argues that the $1,500,000 awarded to Dr. Kessler for "Damage to reputation and standing in the community, emotional distress, emotional pain and mental anguish, loss of enjoyment of life, embarrassment and humiliation, etc." is "patently excessive and not supported by the evidence," and therefore must be reduced or a new trial ordered on the issue of the amount of damages.

Rule 59(a) of the Federal Rules of Civil Procedure provides that a new trial may be granted in an action in which there has been a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Federal law applies in a diversity case to determine whether a new trial should be granted. *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir. 1984). Federal courts have historically exercised their discretion to grant requests for a new trial when, for example, (1) prejudicial error was committed during the trial; (2) the judgment is against the weight of the evidence; (3) the verdict is inadequate or excessive; or (4) new evidence has been discovered. *See Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

In the alternative, the Court may exercise its discretion to deny a defendant's motion for a new trial on the condition that the plaintiff agree to remit a suggested amount of the damages awarded by the jury. The plaintiff may accept the reduced damages as suggested by the Court or choose to have a new trial on the issue of damages. *Brewer v. Uniroyal, Inc.*, 498 F.2d 973, 976 (6th Cir. 1974). Generally speaking, a court should not reduce an award unless it is: (1) beyond the range supported by proof; (2) so excessive as to shock the conscience; or (3) the result of mistake. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 547 (6th Cir. 2007).

Besides reiterating her arguments in support of judgment as a matter of law, Dr. Riccardi contends that the jury's $1.5 million compensatory damages award is excessive in comparison to the

amounts awarded for assault and battery and in comparison with compensatory damages awards in similar cases. The Court finds that the amount of the awards for assault and battery is irrelevant to the jury's consideration of defamation damages, and that, while the amount of damages awarded in similar cases may be persuasive, it is not conclusive. *See S. Ry. Co. v. Sloan*, 407 S.W.2d 205, 211 (1965). The Court also finds, however, that the amount awarded in light of the injuries sustained is beyond the range supported by the proof and is so clearly excessive as to shock the conscience. Based upon the Court's own experience, comparable verdicts for mental and emotional damages in this area, the testimony given at trial and the particular facts and circumstances of this case, the Court finds that the maximum amount reasonably supported by the evidence in this case is $250,000. The Court therefore recommends a remittitur of the $1,500,000 compensatory damages award to $250,000. If Dr. Kessler chooses to reject this suggestion, the case will be remanded for a new trial on the issue of compensatory damages arising from defamation.

  **C.**  **Motion to Set Aside the Jury's Award of Monetary Damages for Battery**

  As Dr. Riccardi points out, under Tennessee law an award of damages must be supported by proof of such damages "within a reasonable degree of certainty." *Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270–71 (Tenn. Ct. App. 1990) (citations omitted). While speculative damages cannot be recovered, in the sense that the fact of damage is uncertain, contingent or speculative, "mere uncertainty as to the amount will not prevent recovery if the evidence is of such certainty as the nature of the case permits and such as to lay a foundation enabling the trier of fact to make a fair and reasonable assessment of damages." *Pinson & Assocs. Ins. Agency, Inc. v. Kreal,* 800 S.W.2d 486, 488 (Tenn. Ct. App. 1990). Thus, in order to be entitled to recover damages a plaintiff must provide the jury with some basis, however approximate, for calculating damages. *Owens v. Univ. Club of Memphis*, 1998 WL 719516, at *17 (Tenn. Ct. App. Oct. 15, 1998).

  The evidence in this case indicates that Dr. Riccardi broke Dr. Kessler's glasses, poured water into his suitcase, and got blood on his dress shirt; Dr. Kessler did not, however, provide even the most rudimentary estimate of the value of these items, nor did he indicate that he incurred medical bills, any expenses due to inconvenience, or monetary damages from lost work time. His testimony regarding the damage to his personal effects established that he suffered economic injury, but it left the jury in the

position of having to engage in speculation and conjecture to arrive at a figure that would compensate him for that injury. The Court therefore finds that there is no material evidence in the record to support the award of $5,000 for monetary or economic damages arising from the assault.

Dr. Kessler argues simply that proof of the amount of damages is not necessary when the fact of damages is clear. Generally speaking, cases holding that damages do not have to be proven in a specific amount do so where the evidence is unavailable, usually by the defendant's fault. Even then, the plaintiff must provide some basis for a reasonable estimate of damages. *Cf. Owens v. Univ. Club of Memphis*, 1998 WL 719516 (Tenn. Ct. App. Oct. 15, 1998) (reversing damages award to two of the plaintiffs, noting that the "record contained sufficient evidence to establish the fact of damages but was insufficient to establish the amount of compensatory damages without resort to speculation and conjecture"). The nature of this case is such that Dr. Kessler could easily have made a reasonable estimate as to the value of the items destroyed by Dr. Riccardi and thereby give the jury something to go by other than guesswork. His failure to do so precludes his ability to recover any amount for pecuniary damages. Dr. Riccardi's motion for judgment as a matter of law as to the award for monetary damages arising from the battery will be granted.

### D. Motion for Remittitur of the Jury's Award of Punitive Damages

Dr. Riccardi does not contest the availability of punitive damages in the present case, but she does contend that the amount of punitive damages is grossly excessive and evidence of passion or prejudice on the part of the jury.

In a diversity case involving state-law issues, state law applies to questions regarding the propriety of punitive damages, the factors the jury may consider in determining the amount of punitive damages, and whether the damages are excessive. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989). Under Tennessee law, the discretion of the jury in fixing the amount of punitive damages is subject to the supervision of the courts. *Coppinger Color Lab, Inc. v. Nixon*, 698 S.W.2d 72, 74 (Tenn. 1985). An award of punitive damages will be set aside if it is grossly excessive or appears to be the result of passion, prejudice, improper sympathy, or for some other reason that appears to constitute an injustice. *Id.* at 75. In addition, an award of punitive damages must be remitted to the extent that there is no material evidence to support it. *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125,

129 (Tenn. 1980). While no court has any right to substitute its own estimate of the damages for that of the jury, it has the right to determine the amount beyond which there is no evidence, upon any reasonable view of the case, to support the verdict. *Id.* at 126.

The Tennessee Supreme Court has held that a trial court reviewing a jury award of punitive damages should consider, to the extent relevant, "at least" the following factors:

(1) The defendant's financial affairs, financial condition, and net worth;

(2) The nature and reprehensibility of defendant's wrongdoing, for example

    (A) The impact of defendant's conduct on the plaintiff, or
    (B) The relationship of defendant to plaintiff;

(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5) The expense plaintiff has borne in the attempt to recover the losses;

(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;

(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901–02 (Tenn. 1992).

With respect to each of these factors, the Court's findings are as follows:

(1) <u>The defendant's financial affairs:</u> The jury indicated that they found it particularly important that Dr. Riccardi obtained approximately $500,000 in her settlement with Vanderbilt prior to trial. In addition, although Dr. Riccardi did not know the current value of her apartment in Naples, bought eighteen years ago for $200,000, the jury could reasonably have surmised that the value of such property had more than doubled in the intervening years, even assuming a very modest rate of accrual in value. In other words, the jury could reasonably have estimated Dr. Riccardi's net worth to be substantially more than she estimated. The Court nonetheless finds, based on the evidence presented at trial, that Dr.

Riccardi's net worth is not large enough to justify a punitive damages award close to the $1,000,000 mark.

(2) The reprehensibility of defendant's conduct:  Under Tennessee law, the reprehensibility of the conduct is gauged by reference to the degree of harm caused to the plaintiff.  *See Coffey v. Fayette Tubular Products,* 929 S.W.2d 326, 332 (Tenn. 1996) ("Normally, the reasonableness of a punitive award is tested by its relationship to the harm suffered by the plaintiff.").  The jury here clearly found Dr. Riccardi's conduct to be morally reprehensible and calculated to "ruin" Dr. Kessler, and the Court has found, as set forth above, that Dr. Kessler proved that he suffered substantial compensable injury  as a result of the Dr. Riccardi's defamation (as well as from assault and battery).  Notwithstanding, Dr. Kessler's injuries were not shown to be as severe as they might have been, despite Dr. Riccardi's intention.  The Court finds that the punitive damages award in this case is disproportionate to the degree of harm inflicted.

(3) The defendant's awareness of the harm caused and motivation in causing the harm:  As Dr. Kessler points out, he presented proof, which the jury evidently credited, that Dr. Riccardi had expressly threatened to ruin him personally and professionally, to sue him for a million dollars, to take his house and get him fired from his job.  (Tr. 86, 90–91.)  Based on this evidence, the jury could reasonably conclude that Dr. Riccardi was motivated by vindictiveness and that she was aware of and intended to cause harm.

(4) The duration of defendant's misconduct and whether she attempted to conceal it:  The jury reasonably determined that Dr. Riccardi was not truthful in her testimony, and believed that she intentionally and maliciously maintained her version of events for more than two years, during which time Dr. Kessler was required to defend himself and his reputation.  Although Dr. Riccardi did not attempt to conceal her behavior, she did attempt to conceal the truth.

(5) The expense plaintiff has borne in the attempt to recover the losses:  Dr. Kessler testified that he spent over $400,000 in defending himself against Dr. Riccardi's claims.  While Dr. Riccardi argues that only the amounts spent to prosecute his own claims should be taken into consideration, the Court finds that the two actions were basically inseparable, and Dr. Kessler could not prove that Dr. Riccardi defamed him unless he also successfully defended himself against her claims.

(6)   Whether the defendant profited from the activity:   Dr. Riccardi did not profit from her defamatory conduct though the jury may reasonably have concluded that she attempted to do so by filing her lawsuit.

(7)   Whether the defendant has been subjected to previous punitive damage award:   This factor is not relevant.

(8)   Whether the defendant took remedial action or attempted to make amends:   Dr. Riccardi never took remedial action nor, to the Court's knowledge, attempted to effectuate a prompt and fair settlement.

(9)   Other circumstances:   Dr. Riccardi does not specifically identify any other relevant circumstances.

All of the relevant factors weigh heavily in favor of a substantial punitive damages award, just not as high as the amount actually awarded by the jury.  The amount awarded likely exceeds Dr. Riccardi's net worth, while Dr. Kessler did not show that his injuries were particularly debilitating.  Accordingly, having reviewed the *Hodges* factors and the evidence in the record, the Court finds that the maximum amount of punitive damages that may reasonably be awarded under the facts and circumstances shown in this case is $250,000.  *Cf. Ellis*, 603 S.W.2d at 126 (Tenn. 1980) (the trial court has the "right to determine the amount beyond which there is no evidence, upon any reasonable view of the case, to support the verdict").  That amount will have the desired effect of adequately punishing the defendant and deterring future similar behavior in the future.  The Court therefore suggests a remittitur of the punitive damages awarded by the jury to the sum of $250,000.  If Dr. Kessler chooses to reject this suggestion, the case will be remanded for a new trial on the issue of punitive damages.

IV.   **CONCLUSION**

For all the above reasons, Plaintiff Patrizia Riccardi's Motion for Judgment as a Matter of Law as to Dr. Kessler's defamation claim as a whole will be denied.  The motion will be granted with respect to the damages awarded specifically for monetary injury resulting from defamation, as there is no material evidence in the record that Dr. Kessler suffered economic injury.  The motion to set aside the $5,000 awarded for monetary injury in connection with Dr. Kessler's battery claim will also be granted, again on

the basis that as Dr. Kessler failed to present any evidence of monetary injuries from which the jury could make a reasonable assessment of the amount of such damages.

Dr. Riccardi's alternative motion for a new trial on the issue of compensatory damages for defamation and punitive damages will be denied, conditioned upon Dr. Kessler's acceptance of the Court's suggested remittitur of the defamation compensatory damages to $250,000 and the punitive damages award to $250,000. If Dr. Kessler informs the Court that he accepts the suggested remittitur as to both these awards, a revised and amended judgment will be entered in this case. If he rejects the suggested remittitur of either of these awards, a new trial on the relevant issue(s) will be ordered. In all other respects, Dr. Riccardi's motion will be denied.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge